UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JAMES CANTON**,<br><br>Debtor. | Case No. **08-61683-11** |

# MEMORANDUM OF DECISION

At Butte in said District this 26th day of August, 2010.

Pending in this Chapter 11 case is the Debtor's Objection (Docket No. 193), to Proof of Claim No. 39 filed by the Estate of Earl Pruyn, Jack Meyer Personal Representative (hereinafter "Pruyn"), based on money loaned. Debtor objects that Pruyn is not a creditor, and instead owes the Debtor $35,695 based on a "trade-out arrangement." After notice a hearing on Debtor's Objection was held at Great Falls on July 9, 2010. The parties were represented by counsel. Testimony was heard and exhibits were admitted. At the conclusion of the hearing the Court took Debtor's Objection to Claim 39 under advisement. After review of Debtor's Objection, Pruyn's response (Dkt. 201), and the record, this matter is ready for decision. For the reasons set forth below the Debtor's Objection is overruled and Claim 39 is allowed.

This Court has jurisdiction of this Chapter 7 case under 28 U.S.C. § 1334(a). Debtor's Objection to allowance of Pruyn's claim against the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Memorandum includes the Court's findings of fact and conclusions of law.

The Debtor James Canton ("Canton") appeared and testified at the hearing on Debtor's Objection, represented by attorney Gregory W. Duncan ("Duncan") of Helena, Montana. Pruyn

1

was represented by attorney Harold V. Dye of Missoula, Montana. Attorney Kevin S. Jones ("Jones"), who signed Proof of Claim 39 on behalf of Pruyn, and who has represented both Pruyn and Canton prior to this bankruptcy case, testified. Michael Harbine ("Harbine"), Canton's employee Penny Howe ("Howe"), and another Pruyn attorney Liana J. Messer ("Messer"), also testified. The Court admitted Pruyn's Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, and 7 into evidence. At the beginning of the hearing the Court sustained Pruyn's objection to admission of the Debtor's proposed exhibits and excluded them on the grounds the Debtor failed to file and exchange his exhibits three days prior to the hearing as required by Mont. LBR 5074-1(b)[1].

## FACTS

Earl Pruyn ("Earl") was a veterinarian who operated a veterinary clinic in Missoula. He also engaged in business ventures and loaned money to friends and acquaintances. Harbine and Canton testified that Earl loaned money to them. Jones performed legal work for Earl, and for Canton.

Earl kept a handwritten looseleaf notebook/ledger listing his loans, payments, and balances, which Canton, Harbine and Jones described as Earl's "Black Book[2]." Jones testified

---

[1] Mont. LBR 5074-1(b) provides in part: "Failure to timely exchange and file proposed witness and exhibit lists and copies of proposed exhibits in accordance with this rule may result in the Court . . . denying the admission of any unexchanged exhibits." Canton filed his Objection on October 9, 2009, and the hearing was not held until July 9, 2010. Duncan did not file his exhibits at Dkt. 278 until July 8, 2010, and Dye stated that he received them at 3:00 p.m. on the day before the hearing. Dye filed Pruyn's exhibits filed on May 10, 2010, prior to a hearing scheduled on May 13, 2010, which was continued at Canton's request. The Court excluded Canton's exhibits at Dkt. 278 based on Canton's failure to comply with LBR 5074-1(b), and Duncan's statement to the Court that he had Canton's proposed exhibits but delayed filing them because they were going through the exhibits and thought that some were missing.

[2] The second and fifth pages of Ex. 1, Proof of Claim 39, are printouts of escrows receivable of Pruyn, showing Canton's balances owing as of 10/24/08 in the sums of $16,586.75

that he had seen Earl's Black Book and was familiar with it.  In addition, Jones testified that Earl had a full time employee named Ruthanna, who helped Earl keep track of his loans on a separate computer program.

    Harbine testified that Earl did everything by handshake, but that Earl talked very directly to borrowers to make sure they understood that he was in charge of the money.  Harbine testified that when he paid off his loans, Earl wrote "Paid in Full" on Harbine's account in his Black Book.

    Canton testified that he knew Earl since he was 7 or 8 years old.  He testified that Earl was private with his business affairs, but that his word was his bond.  Harbine testified that Earl considered Canton to be family because Earl did not get along well with his own sons.

    Canton testified that he went into business with Earl in the early 1990's, and that Earl loaned him money.  Canton testified that he and Earl trusted each other, and that Canton kept his files in Earl's office for safekeeping.

    Canton testified that Jones performed legal work for Earl and Canton, including drafting contracts, an "Option" on Canton's property for Walmart discussed below, Earl's will, and some zoning work for Canton.  Jones agreed that he performed legal work for Canton and Earl, and is Pruyn's main probate attorney[3].

    Canton testified that he entered into a fertilizer business partnership with Earl from 2004 to 2006, and that Canton incurred $15,000 in expenses purchasing a truck and renewing Canton's

---

and $101,000.00, respectively.  Those pages both include a reference to a "Red Book."

[3]Jones began representing Earl in 1998 doing collections.  He admitted that he does not know about all of Earl's business dealings, but that when Earl involved him in a matter he told him all he needed to know.

fertilizer license, and that Pruyn owes him from that venture. Howe testified that she picked up the fertilizer truck and was aware of Earl's and Canton's arrangement.

Canton signed a promissory note dated February 7, 2007, to Pruyn in the amount of $21,000. Ex. 1. Harbine testified that he was present when Canton handed a check directly to Pruyn, and he recalled that Earl went immediately to his Black Book and wrote it down. Harbine could not recall the date, although he felt August 13, 2007, sounded about right, and Harbine did not look at the check. The third page of Ex. 1 shows ledger entries for the Jim Canton account in Earl's Black Book, and show a debit entry dated 8-13-7 in the amount of $16,413.25. Jones noted that the $17,500 payment is included on the third page of Pruyn's Claim 39, Ex. 1, dated 8-13-07, as a combination of debit and credit. Under cross examination Canton admitted that he owed Pruyn money prior to the Option, but he disagreed that the amount owed was $117,000 and that he could remember owing only $26,000.

Canton testified that Pruyn owes him money from when Canton purchased a promissory note on a skidder from Earl, and that the skidder is in Pruyn's estate. He testified that Pruyn owes him $2,500 from appraisal support Canton did for Pruyn, and that Pruyn owes him $500 from when Canton arranged for trees to be cut from Pruyn's property.

Canton testified that he gave Pruyn an Option to purchase land which Canton owned near Stevensville, Montana, which Pruyn hoped to market to Walmart. Canton testified that he had not filed or paid his taxes, and that Pruyn gave him $100,000 to pay the taxes. Harbine agreed and testified that Earl got the first option to purchase Canton's property and supplied Canton with the money to make his payment.

Jones drafted the Option Agreement between Earl and Canton, dated March 17, 2008.

Jones explained that the purpose of the Option Agreement was to give Earl a recorded interest in Canton's property so that Walmart and developers would negotiate with Earl to purchase the property. The Option Agreement is included in Exhibit 3 attached to Ex. 6, and in Ex. 7. Ex. 7 also includes conflict of interest waivers signed by both Earl and Canton waiving conflict of interest claims they may have against Jones and Christian, Samson, Jones & Chisholm, PLLC. Jones testified that he requested both Canton and Earl to sign waivers when they asked him to prepare legal documents, including the Option Agreement and wills for both of them, during the Fall of 2007.

Jones testified that Canton wanted, in case of his death, to leave about $2 million for the care of his father and one other person, but nothing to his sister and her sons, and he wanted to leave everything else to Earl. Jones testified that, when he met with Canton after Earl's death, Canton told him that Earl forced him to rewrite his will to repay Earl the money owed[4].

Canton testified that Earl told him that all his debt was forgiven and satisfied by the Option. But Canton offered no written document which states that Pruyn forgave Canton's debt. Canton testified, that when Earl became sick, he told Canton that if he died he was going to give Canton all Pruyn's interest in the Option, and that Pruyn drafted an amendment to his will to give Canton the Option and keep it away from Earl's family.

Canton testified that he saw a mark in Earl's Black Book stating "IOU Zero," which he explained meant that his debt to Earl was zeroed out, and that Earl did not owe Canton and

---

[4]Earl and Jones discovered that Earl did not have any security for repayment of Canton's loans. Jones testified that Earl wanted him to draft a note and mortgage, but changed his mind when he discovered liens against Canton.

Canton did not owe Earl anything[5]. On cross examination Canton admitted that he never mentioned the Black Book to Pruyn's counsel at his deposition as a basis for the alleged forgiveness of debt.

Pruyn's counsel impeached Canton with his deposition testimony, Ex. 5, page 13, lines 20 through 24, where Dye asked Canton if he could point to where the Option Agreement states that Earl forgave Canton's debt, and Canton answered "No[6]." On redirect examination Canton's counsel tried to rehabilitate Canton by eliciting testimony that Canton's mind was on settlement during the time of his deposition and that it lasted an hour and a half. Canton repeated that the Black Book would reflect that Earl forgave Canton's debt. The Black Book was not offered.

Earl died in June 2008 and his estate went into probate. Jack Meyer ("Meyer") was appointed Earl's personal representative for the Pruyn estate. Jones testified that he met with Meyer weekly and documented the amounts owing by Canton to Pruyn from the estate's records. He testified that the bookkeeping entries listed on Pruyn's Claim 39 tie into checks and coincide with Earl's Black Book entries.

Jones and Meyer met with Canton in September 2008. Jones testified that he told Canton to find a different attorney to complete Canton's will. Jones wrote a demand letter to Canton in October 2008 to collect $117,000 owed to Pruyn.

---

[5] The last page of Ex. 1 on Claim 39 is a page from Canton's account in the Black Book which includes the notation "IOU," but no indication that the amount owing is zero. Rather it states the balance as of 6-15-07 as $101,000.00.

[6] Canton stated on page 14 that the Option Agreement was not the complete option, and that there are other written documents but Canton does not have copies of those. Later in Ex. 5 at pages 16 & 17 Canton stated that his documents were in a blue folder kept in Earl's office, and that Pruyn had not provided Canton with his documents.

Canton testified that he went to Earl's office three times after his death to recover his files, an appraisal, unassigned deeds, his green spiral notebook, equipment, the Walmart package, the amendment to Earl's will, and other documents from Pruyn's office after his death, but that Pruyn's representatives denied him entry and would not return his phone calls[7]. Canton testified that he asked for his records from Pruyn's estate but they still have not been produced. Howe testified that she accompanied Canton to Jones' office, where they were given two folders containing documents which they were told were all of the documents pertaining to Canton from Pruyn's office.

Messer is an attorney from the law firm of Christian, Samson & Berg, who along with Jones represents the Pruyn estate. Messer testified that she was tasked with compiling Pruyn's documents, and she drafted a memorandum, Ex. 2, to Jones about Earl's dealings with Canton. Messer testified that she reviewed accounts provided by Meyer, which were prepared from photocopies of Earl's Black Book, but of which she admitted she had no personal knowledge. When asked whether she observed any notations from the Black Book stating that Canton's debt to Earl was forgiven or that he owed Earl nothing, Messer answered "No."

Ex. 3, and Ex. 1 to Pruyn's Ex. 6, is a "Notice of Claim" which Canton filed in Pruyn's Probate No. DP-08-115 in the Montana Fourth Judicial District Court. On that Notice of Claim Canton requested a number of his documents and other materials, but did not request copies of Earl's Black Book. On the third page of Ex. 3, paragraph 2, Canton contends: "The consideration for the option was the forgiveness for all the amounts owned [sic] to James Canton or owned [sic] by James Canton to Earl Pruyn. This includes the $117,000.00 demanded in the

---

[7] Canton testified that people "threatened to kill me."

letter of October 23, 2008." Jones testified that he requested from Pruyn a report of Earl's loans to Canton in October 2008, and was given the reports attached to Claim 39, Ex. 1. Jones also testified that he discussed Canton's debts with both Canton and Earl.

Jones issued a response to Canton's Notice of Claim, Ex. 4. Jones testified that Earl's son and Ruthanna went through Earl's office and sent all documents to the personal representative's office where they were scanned. Jones asked for copies of all of Pruyn's documents pertaining to Canton, and sent those to him.

Canton filed his voluntary Chapter 11 petition on December 2, 2008. Canton filed his original Schedules and Statement of Financial Affairs on December 17, 2008. Pruyn was not listed as a creditor. Schedule B, item 20 ("Contingent and noncontingent interests in estate of a decedent . . .") lists Pruyn's Probate No. DP-08-115, and a current value of the Debtor's interest in the sum of $35,695.00. Notice of commencement of the case was sent to Pruyn at Jones' address (Dkt. 13).

Canton amended his Schedules several times. In Canton's fourth amendment, Dkt. 27 filed January 31, 2009, he amended Schedule G to list Jones as attorney for Jack Meyer, and disclosing the Option Canton granted to Earl to purchase property, so that Earl could market the property to Walmart. Fourth Amended Schedule G states: "Consideration for the Option was forgiveness of debt from Canton to Pruyn . . . and it is disputed whether or not the Option terminated upon Pruyn's death."

On Pruyn's behalf Jones filed Proof of Claim 39 on September 17, 2009, asserting an unsecured nonpriority claim in the amount of $117,586.75. Ex. 1. Claim 39 is accompanied by attachments including handwritten ledger entries evidencing loans from Pruyn to Canton, a

8

promissory note in the amount of $21,000.00 signed by Canton payable to Earl Pruyn dated 2/7/07, and computer printouts.  The printout dated 10/24/08 attached to Ex. 1 states the balance owing by Canton on that date as $101,000.

Jones testified that he recognizes the attachments to Claim 39 as copies he obtained from Pruyn's personal representative Meyer, and from printouts obtained from Meyer's office.  Jones testified that he personally viewed the Black Book and verified the figures on Ex. 1.  Canton's attorney asked Harbine on redirect examination if the handwritten ledger entries on Ex. 1 are similar to the Black Book and Harbine answered:  "That's Earl's writing."  Harbine continued that the ledger pages attached to Ex. 1 were definitely from Earl's Black Book.  Canton testified that none of the attachments to Claim 39 are from his green spiral notebook.

Canton filed his Objection to Claim 39 on October 9, 2009, contending that Pruyn is not a creditor but instead owes Canton $35,695.00 as a result of the "trade-out arrangement" with Pruyn.

## DISCUSSION

Rule 3001(f), F.R.B.P., provides that a proof of claim completed and filed in accordance with 11 U.S.C. § 501 and any applicable Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim.  Thus, if a procedurally proper claim is filed, the objecting party carries the burden of going forward with evidence contesting the validity or amount of the claim.  *In re Weber*, 16 Mont. B.R. 49, 56 (Bankr. D. Mont. 1997); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991).

Pruyn's Claim 39, Ex. 1, includes two pages allegedly from Earl's Black Book of Canton's loans, a copy of the promissory note, and two pages of printouts of Earl's loans to

Canton from Meyer's office. Montana Local Bankruptcy Rule ("LBR") 3001-2 provides in pertinent part:

> Entities filing documents or attachments not prepared in electronically produced text shall scan and electronically file only excerpts of the documents that are directly germane to the matter under consideration by the Court. Excerpted material must be clearly and prominently identified as such, and the complete exhibit must be made available to the attorneys and the Court on request.

After review of Ex. 1, the Court finds that Pruyn has complied with § 501, Rule 3001 and LBR 3001-2. Claim 39 includes excerpts from Earl's Black Book and printouts that are directly germane to the validity and amount of Pruyn's claim as required by LBR 3001-2. Therefore, Claim 39 constitutes *prima facie* evidence of the validity and amount of the claim. Rule 3001(f).

If the objecting party succeeds in overcoming the *prima facie* effect given to the claim by Rule 3001(f), the burden shifts to the claimants to prove the validity of their claims by a preponderance of the evidence. *In re Allegheny Int'l, Inc*. 954 F.2d 167, 173-74 (3rd Cir. 1992). This Court discussed in more depth the applicable law governing the burden of proof for allowance of claims *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):
>
>> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes

10

>   to Fed. R. Bankr.P. 9014.
>
>   Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, COLLIER ON BANKRUPTCY § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.
>
>   * * * *
>
>   "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.
>
> *See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).
>
>   Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

The analysis under *Lundell* was reiterated by the Ninth Circuit *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002). The Court approaches Canton's Objection to Claim 39 mindful of the above.

Claim 39 states the amount of Pruyn's claim. It is accompanied by excerpts from Earl's Black Book and the personal representative's office giving additional detail of the loans and payments, and a copy of the promissory note. Canton argued that Pruyn failed to prove that the handwritten excerpts from the Black Book were in Earl's handwriting because Jones could not testify that it was. However, Canton's own witness Harbine testified, answering Canton's attorney's question on redirect examination about the handwriting on Ex. 1: "That's Earl's writing." Canton himself testified that he borrowed money from Earl. Given that admission and the written evidence in the record, Ex. 1, and Harbine's testimony, this Court finds that Canton, as the objecting party, has not produced sufficient evidence to cause the burden to revert to Earl to prove the validity and amount of his claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

All Canton offered in support of his Objection is his testimony and statements that Earl forgave all his debts as a result of the Option Agreement. Weighed against the *prima facie* effect of Ex. 1, Harbine's testimony verifying Earl's handwriting, and the testimony of Jones and Messer, the Court finds that Canton's testimony does not tend to defeat the claim by probative force equal to that of the allegations of Proof of Claim 39 itself. *Lundell*, 223 F.3d at 1039 (quoting *Holm*).

The initial burden of proof is on Canton, and the Court finds that Canton failed to satisfy his initial burden so as to shift the ultimate burden of proof to Pruyn. Pruyn took a risk by not offering the Black Book and testimony of Pruyn's personal representative Meyer, but Pruyn does not have the initial burden of proof, and chose to rely on the *prima facie* effect of Rule 3001(f).

A general presumption exists that states that a party's failure to produce evidence, which

12

under the circumstances would be expected, leads to an inference that the evidence would not have buttressed Pruyn's position or indeed would have undercut it. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 174, 94 S.Ct. 414, 420, 38 L.Ed.2d 388 (1973); *See also P.R. Mallory Co. v. NLRB*, 400 F.2d 956, 959 (7th Cir.1968), *cert. denied*, 394 U.S. 918, 89 S.Ct. 1191, 22 L.Ed.2d 452 (1969) ("[F]ailure to produce evidence, which under the circumstances would be expected, gives rise to a presumption against the party failing to produce it."). That general presumption, however, must give way in the instant case to the evidentiary effect of Rule 3001(f) and the holdings of *Lundell* and *Holm* placing the initial burden on the objecting party, Canton.

Canton complains that Pruyn failed to produce the Black Book entries where he contends Earl wrote that his debts were forgiven. But Pruyn denies that any such notations exist. For some unknown reason Canton did not subpoena the Black Book or the attendance at the hearing of the personal representative Meyer. Canton had the right under LBR 3001-2 to "the complete exhibit ... on request." Rule 2004, F.R.B.P., allows any party to move for examination of any entity and to compel attendance and the production of documents, which this Court routinely grants under LBR 9013-1(g)(2)(C). LBR 9014-1 provides in pertinent part: "The subpoena powers of attendance and production allowed under F.R.B.P. apply in contested matters" such as the instant Objection. There appears to have been requests for documents, and production of a large number of documents to Canton's counsel. Canton filed his Objection on October 9, 2009, and the hearing was not held until July 12, 2010, so Canton had more than nine months to obtain the Black Book in discovery. Canton did not subpoena the Black Book, or Meyer's appearance at an examination or hearing, and did not move the Court to compel production of the Black Book. By failing to produce the Black Book in support of his testimony that it includes notations that Earl forgave

13

Canton's loans, the Court finds that Canton failed his initial burden to produce sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). Having failed to satisfy his burden,

    **IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling the Debtor's Objection (Dkt. 193) to Proof of Claim 39 filed by Pruyn.

                                  BY THE COURT

                                  /s/ Ralph B. Kirscher
                                  HON. RALPH B. KIRSCHER
                                  U.S. Bankruptcy Judge
                                  United States Bankruptcy Court
                                  District of Montana